Good morning, your honors. My name is Matthew Winter. I represent Paul Campos. I'd like to reserve two minutes, please, for rebuttal. Your honor, in this case, the district court violated Mr. Campos' due process rights by receiving and relying on hearsay evidence at a supervised release hearing. The court specifically relied on that evidence, as it was the only evidence that came in showing that Mr. Campos either robbed a bank or committed a theft at the diner. Could I just ask you right off, who would be the most important witnesses for Mr. Campos to confront regarding the robbery? And how might their testimony have affected the district court's determination? First, with the bank robbery, I think the bank teller. In this case, the bank teller failed to identify Mr. Campos as the robber. Secondly, the bank teller would be able to corroborate the time stamp on both the photograph that was taken of the robber. But if the bank teller couldn't identify him, why does he need to confront him? The bank teller already gives him a free pass. Well, I think then that goes to my second argument, which is based upon the sufficiency of the evidence or the insufficiency of the evidence that was brought to the court. But that's not exactly what Judge Nelson asked you. Who would he have to confront in order to test the veracity of the evidence used against him? The evidence was two photographs showing him to be in the bank and a police report showing that when he was arrested, he had $78,092 bills that were stolen from the bank. Well, that's a little bit incorrect because there's nothing tying the money to the bank. All right, he just happened to have $78,20 bills and $92,20 bills had been stolen from the bank. In the meantime, he had a little bit to prick. He could have accounted for the $14 bills that were missing. But unless they have testimony that says that those dollar bills or those $20 bills... I mean, if he confronted the policeman, right? The policeman said, we found him in this restaurant. He seemed to be under the weather and he had $78,20 bills on him and $92 were stolen from the bank. Right? Correct. So how would you cross-examine a policeman who said that? Well, I would cross-examine him and... And say, you don't know if these were from this bank. They could have been, what, from some other bank? Well, they could have been from anywhere. They could have been from his family. They could have been from another bank or they could have been a lawful withdrawal from a bank. It's a matter of reasonable inferences from the evidence, right? But that... What about cross-examining the policeman would take away credibility from his statement, I found him in the restaurant with $78,20 bills? Because the cross-examination of the police officer would further show how those dollar bills or those bills were found, that they were not connected to the bank. It wasn't just my argument that they weren't connected to the bank. Well... That the bills did not add up to the amount taken from the bank. The policeman would be able to have on his body at that time when he found him, shortly after the bank robbery, a list of the $20 bills from the bank, if there was such a list? I think he should have. And the fact that there wasn't such a list is exactly what showed that the dollar bills or the bills that were on Mr. Campbell's possession may not have been tied to the bank. These were not bills, bait bills, as we sometimes describe them. They were not bills where a censor was slipped in between them. There's nothing tying these bills to the bank, other than the inference that because a man has a large amount of money, he must therefore have robbed the bank. But he was in the photograph, taken about the time of the robbery. He doesn't dispute that. I think about the time of the robbery is generous, and we did not concede that that was Mr. Campos in the photograph. You don't dispute it, though? We did not dispute it. But the person in the photograph is at least 12 minutes in the bank, at the teller window, before the bank robbery is supposed to have happened. So even taking that evidence out on its face, if Mr. Campos was the person in the bank, he's at the bank 12 minutes before the bank is robbed. And then we take that photograph and show it to the teller, and she says, I can't identify that person. So here's another instance where testing the witness, the teller, the people in the bank, would have been crucial to Mr. Campos' case, because maybe here it would have pointed out to the district court the amount of disparity between the witness statements and the evidence. But you already got gold out of the teller. She said, I can't identify him even with the photograph. Then I turned to her. What more do you need than that? Because for some reason, the district court did not see that gold. And for that reason, then I might turn to argument number two, which is that they saw the dollar bills in the photograph. But even if they saw the dollar bills, again, it doesn't connect to the bank, and the photograph doesn't connect to the time of the robbery. So there's a huge disparity there. And then my second argument is that even if those things are taken on its face, that they're insufficient to prove Mr. Campos robbed that bank. On a preponderance of the evidence standard? Yes, even on a preponderance of the evidence standard. How's that? Explain that to me. Because the time doesn't – what – if we take this case on its face, the evidence shows that – and even assuming Mr. Campos is in that photograph, Mr. Campos was in the bank at 1, a little after 1 o'clock. Around 1.20 to 1.30, the bank was robbed by some individual. And then hours and hours later, Mr. Campos is found with money in his pocket. That is not tied to the bank. That's the evidence before the court. The further evidence would be that the teller can't identify him. The other witnesses in the bank cannot identify him. There's no fingerprint evidence. That was all brought out at his trial, right? Well, at the supervision hearing. The supervision hearing. So – okay. So what more would I need? In this situation, I think I would have needed – the further testing would have maybe showed more to the district court why this evidence was not reliable and maybe even completely unsupportive of the finding that she made. Was there any explanation given that you've seen as to why the policemen weren't produced at the hearing? No. A trip to Maui is an inexpensive flight in the Zilens. The agent came from Maui to here. One of the individuals, the person that actually produced the photograph, was situated in Oahu. It's something that – it's a minor expense for something as serious as Mr. Campos' hearing. What would the policemen have disputed had he been there? Well, I think the policemen would have been able to at least taken away or peel back one layer of hearsay. So we would have had at least a little bit more reliable evidence brought before the court. I don't concede that the policemen alone would have been enough, but at least it would have been closer to someone who actually spoke to the teller. But furthermore, I think the policemen could have at least shown with some more certainty how the photograph was taken, from what angle it was taken, and maybe why there's this timeless – The policemen would have known that? Maybe, because I think the policeman was the person that spoke to bank management, and the policeman was the one that picked up the photograph. But the policeman's testimony there wouldn't have carried the day. The cameras were in place. They were where they were, whatever the policeman said. And I don't concede – And I don't concede that the policeman would have done it, but at least it would have had more substantiated the report for the due process reliability that we're looking for in this type of situation. What do we have to find, in your view? You have to find that the due process clause requires some type of confrontation weighed against the government's interest in this case. In this case, Mr. Campos had a huge interest in the outcome. In this case, he had a huge interest in testing the evidence. It was unreliable hearsay. The hearsay was assertations made by a witness against him, and those are the kind that should be tested in a situation like this. Did you get any comfort from the Massachusetts blood testing case in the Supreme Court? Are you aware of it? I'm not. The one that gives me the most comfort is the Perez decision, Your Honor. Is he? It's the United States v. Perez, the decision you offered, Your Honor. And in Perez, we had a situation where it was just the testing of the urine sample, and the urine sample test said that for reasons, it said it was insufficient test on the document. So the document called into question the results. Here we have, I think, even something that goes beyond Perez, because taken at its face, the hearsay evidence, we have questions about whether or not Mr. Campos robbed a bank. And apart from Perez, we have a situation where it's actual testimonial hearsay that was brought in instead of a lab report, and this court has given a little more grace to lab reports than it has for testimonial evidence. Mr. Winter, take me through again what confrontation with the police would have made their testimony that he had 78 $20 bills and there were 92 stolen from the bank. It would have allowed me to further question the evidence seized and to further show the court that that evidence had no relation or the government could not prove that it had a relation to that bank robbery, other than the pure numbers. But the police report didn't say, we traced the numbers. Correct. The police report didn't say anything other than we found 78 and there were 92 stolen. Correct. And maybe on the police report, I'm better off than the witness testimony from the bank and from the teller. Your burden is to show how, as a constitutional matter, you would have changed the result by confrontation. Because in confrontation, I would have been able to show more disparity between the witness's testimony and the evidence which the judge seemed to rely upon. What's the disparity? It's 78 and 92 and they were both $20 bills. And then again I go to the insufficiency argument, which I made, is that if the court's going to rule on this type of hearsay, it has to be reliable evidence for the court to make a finding on a supervised release violation. Well, let me just ask, you cited the Perez case. Yes. The Perez case talked about balancing. Correct. Did you submit any evidence about where the 78 $20 bills came from? No. Something to balance, all right. What was there to balance here under the Perez case? And that's not the defendant's burden, but the balancing test is this, and it's from Hall, Camito, and Perez. It's the importance of the hearsay evidence. Here it was vastly important because it was people saying, basically, this guy robbed the bank or the inference that this guy robbed the bank. Then the second part of the defendant's balancing test, the nature of the facts proven. Again, whether or not he robbed this bank or failed to pay for his meal at that store, the government side of the scale is simply the difficulty and expense of procuring the witness. That's very minor. And the traditional indicia of reliability. Well, from Crawford and the other Sixth Amendment cases, we know that this type of testimonial evidence is the type that is the reliability is often questioned and should be tested. We're barred from considering Sixth Amendment in this kind of case. I agree. And I pointed that out in my brief. I just point out Crawford because it shows that this type of evidence is important. All right. I'm sorry you've exceeded your time. We'll give you a moment, a minute afterwards. I appreciate that. Mr. Osborne. Thank you. May it please the Court. Good morning. Les Osborne for the United States. Why didn't you produce the policeman who found him in the bar or in the restaurant to testify that they arrested him and found $78, $20 bills on him? One, because of the interruption to his life, the cost to the government, and the nature of the important testimony, Your Honor. This is the nature of the hearsay testimony. No police officer is going to report that he removed $1,500 and some dollars from a suspect unless he did. There's no reason to doubt. I hope you don't have any cases saying that. No, Your Honor. I have common sense saying that. It's the reliability of the hearsay that's a critical issue. And in this case, to have said, for the officer to have said, oh, yeah, I took $1,500 off him, well, he might want it back, Your Honor, if the officer took the money from the defendant. Are you suggesting it's more likely that an officer would keep the money and not report it? No, Your Honor. It's more likely that the officer would not make the report unless it were true. Well, let's talk about the reliability of the photograph. The bank teller failed to identify Campos from the photo lineup, and the record does not indicate that any witness looked at the photograph of Campos and said, that's the robber. What reliable evidence that you're talking about did the district court rely on to conclude that the surveillance photograph was of Campos? We know that the photograph was taken within minutes. It was taken from the 12 minutes. That depends on the time stamp, Your Honor. And we don't know how many minutes really. The best case for the defense, if you take the time stamp at face value, you're right, it's 12 minutes. The district court had the opportunity to observe the photograph. And observe Campos? And observe Campos. And the district court said, they're the same person. Not in that language. She was much more artful than I am. But in fact, she concluded that they were excellent photographs of the probation violator seated before her. So she had the opportunity of seeing the man who was in the bank at the victim teller's station within minutes of when the robbery occurred. And that same person was found hours later intoxicated with 78 $20 bills in his pocket. And that's the preponderance of the evidence. The officer can be deemed reliable in reporting that he found the money. And there is no doubt from the photograph and from the quality of the photograph and the actual fact that the defendant's there, that the court could see from its own eyes that they're the same people. In addition, there was all kinds of hearsay, admittedly, corroboration of the identity of the defendant. But the quality of the photograph clearly was the appropriate evidence for the court to consider. And the very important fact that he had unexplained $1,500, $20 bills in his pocket. That's the evidence upon which the court acted. And the government contends that that beats the preponderance of the evidence standard. And her conclusion was appropriate. Unless there are any questions. Thank you. Mr. Woodard. Just briefly. What I wanted to point out for the court is it's not just the best case for the defense that there was a 12-minute timeout. That's actually, I think, the best case for the government is that it was 12 minutes. One witness said that the bank robbery occurred around 1.20 and another more towards 1.30. So the best case for the defense is actually a 20-minute time gap between the time Mr. Campos was photographed and when the bank was robbed. Well, and Mr. Campos, at least on this record, Mr. Campos hasn't admitted that the photograph was of Mr. Campos. Correct. Taking the government at that evidence. But even taking them at that evidence, the photo does not show a bank robbery. It just shows a person looking like Mr. Campos. Is there a difficult problem for you when anybody looking at the photograph can see that it's clear and not distorted? No. If the photograph showed a bank robbery or if the teller said from the photograph that's a bank robbery. It showed a person. And the judge said, I see that person. He's sitting here. Would the photograph, in your view, is there any problem with the photograph being clear enough for somebody to make that conclusion, show that conclusion? No, because it doesn't show that he's robbing the bank. It may show him. Correct. But it doesn't show him in the act of robbery. It shows him on the afternoon the bank was robbed in the bank. And this record also shows that he has never admitted that he was there at that time, does he? Correct. Does he? That's correct. Is that for you or against you? I think because it's the government's burden in this type of hearing. I realize it has a burden, but somebody has looked at what is the evidence in this case, undisputed evidence in this case, and drawn a conclusion. But we're not in a situation where it would be a credibility finding against Mr. Campos, which then the district court could use to make its finding, because it's not Mr. Campos taking the stand and saying it's not. Different minds may differ, but it might have been his advantage to admit he was there. This is his picture, but he didn't rob the bank because a person looking at it says, here he is. This is Mr. Campos. Mr. Campos says, no, I'm not going to say I was in that bank. I'm not going to say all these things. You're thinking we've got an innocent man. An innocent man. What is that? Don't you think? Maybe for a layman, but for a criminal defendant to take the stand at a hearing like this first raises the issue. He didn't have to. I'm just looking at it. We have to look at the record, don't we? You do. And when we look at the record, we have to conclude what? I think you have to conclude that first he was denied his confrontation rights under the due process process. We're reviewing a decision of a judge, so don't we have to find something? What do we find if we decide for you? This is a de novo review, so you can make a finding of either that he was denied the constitutional principle or that the evidence was insufficient to make the judge's decision. Do you question the authenticity of the photograph as coming from the bank? Is your claim that you weren't able to cross-examine the custodian of the photograph or the record from the bank to verify that it was, in fact, taken at the bank? I think that question has not been tested. Furthermore, the question of your time. You don't raise it on appeal? We don't raise it on appeal. So let me not hold you. Thank you. Thank you very much. Thank you for your time. The case of the United States versus Campos is submitted.
judges: Farris, Nelson D. W., Bea